capacity resulting from the accident has since increased or diminished.

The judgment of the district court is affirmed.

**98 So.2d 166**

**Succession of Vincent PATTI.**

**No. 43226.**

Nov. 12, 1957.

Joseph Rosenberg, New Orleans, for mover in rule and appellant.

David C. Treen of Beard, Blue & Schmitt, New Orleans, for appellee.

SIMON, Justice.

Mrs. Amelia Sander, widow of Vincent Patti, has appealed from a judgment dismissing her rule to show cause filed against the executor of the estate of the decedent why there should not be deleted from the inventory filed herein certain homestead funds amounting to $3,400, and why she

should not be recognized as the sole owner thereof.

The record discloses that the said sum represents funds deposited in separate accounts in two homesteads, each account to the credit and in the name of "Mr. or Mrs. Vincent Patti." The balance of $2,400 deposited in Account No. 7047 of the Hibernia Homestead Association represents the aggregate of various sums deposited therein at various times from October 20, 1952 to November 8, 1955. The balance of $1,000 deposited in Account No. 3740 of the Greater New Orleans Homestead Association represents the aggregate of various sums deposited from February 28, 1955 to October 13, 1955.

This succession was duly opened and the inventory filed herein lists the said two homestead accounts as being the property of the deceased. Mrs. Patti claims sole ownership of said funds, contending that all of the deposits in both homestead accounts were made by her from her personal funds, thus presenting herein purely a question of fact.

The record discloses that Mr. & Mrs. Patti were married for a period of about twenty-eight years; that on June 28, 1950 a judgment of separation from bed and board was rendered between them, and a settlement of the community was effected by notarial act dated August 25, 1950. Some time during the early part of 1952 Mr. &

Mrs. Patti became reconciled and assumed their marital relations until the death of Mr. Patti on November 12, 1955. The community of acquets and gains, dissolved by the judgment of separation from bed and board, was not reestablished.

In an effort to establish sole ownership of the funds in the homestead accounts Mrs. Patti attempted to prove that she had sufficient separate funds from which the deposits were made. She testified that prior to her marriage in about 1922, she accumulated the sum of $3,000 from her wages as an employee in a cigar factory, the custody of which allegedly remained with her parents until about 1946. During her marriage she spent a small but undetermined amount of said savings. However, she testified that Mr. Patti had no knowledge of her possessing this sum of money, she having withheld this fact from her husband. She testified that this sum was the source, or partially the source, of the deposits made in the Hibernia Homestead Association, which account was opened on October 20, 1952 with the initial deposit of $400 and the deposits made in the Greater New Orleans Homestead Association, which account was opened on February 28, 1955 with the initial deposit of $440. The source of this latter deposit is contended to be a certain sum of $449 inherited from her parents by judgment rendered June 8, 1951. There is no explanation in the record why the inherited money was not deposited until a lapse of

sixteen months, or why any part of the alleged paraphernal earnings of $3,000 was not deposited at an earlier date.

Mrs. Patti also contends that the source of the deposits appearing in the homestead accounts was certain rentals received by her from the rental of her separate property.

Mrs. Patti tells a rather incredible story of saving money—her earnings prior to her marriage, her rentals and her inheritance—in her cedar chest over a period of weeks, months and years, and then removing various sums therefrom for deposit in one or the other of the accounts, or both. At best her testimony in many instances is confusing and her system of banking contrary to common or logical lay practices. There is significance, however, in the fact that neither account was opened until a date subsequent to the reconciliation of Mr. & Mrs. Patti, and further that such a comparatively nominal sum of the alleged accumulated earnings and savings represented the initial deposit made in the first homestead account opened on October 20, 1952.

A review of the testimony relative to the alleged deposit of the rentals as well as the alleged deposits of the savings and earnings accumulated prior to her marriage reveals such discrepancy as to prevent our recognition of her claim as sole owner of the funds in both homestead accounts. In regard to rentals as a source of these homestead deposits, it appears that the property was rented from October 27, 1952 through March 23, 1953, at a monthly rental of $50, or a total of approximately $250 during which period of time deposits in the Hibernia Homestead totalled the sum of $597.55. During the period July 6, 1953 through March 30, 1954 deposits in the Hibernia Homestead Association totalled $866.79, during which period of less than nine months Mrs. Patti's rental income was $450. From October 27, 1952, the date of the first Hibernia Homestead Association deposit claimed to have been made from rent, until February 28, 1955, the date the account in the Greater New Orleans Homestead Association was opened, deposits in the sum of $2,144.24 were deposited in the Hibernia Homestead Association. During this period of twenty-eight months Mrs. Patti testified to having received rent at the rate of $50 per month for approximately twenty-six months and at $60 per month for two months, or a total rental income of $1,420 or $724.24 less than the sum deposited in the Hibernia Homestead Association during this period.

From February 28, 1955 to October 13, 1955, inclusive, we find a total of $1,000 had been deposited in the account in the Greater New Orleans Homestead Association. An examination of these deposits affords no satisfactory or acceptable explanation of their source.

Mrs. Patti testified to having received the sum of $30 per week from her husband for household expenses. The appellees contend that Mr. Patti was employed by Hig-

gins, Inc. and received approximately a net income of $64–$72 per week. He inherited and received on February 7, 1955 the sum of $1,882.48, out of which he purchased an automobile for the price of approximately $1,500 on February 21, 1955. There is no explanation as to the disposition of the balance of said inheritance, or of the balance retained by him from his net earnings.

On the face of the deposit books issued by each of the homesteads in the name of "Mr. or Mrs. Vincent Patti," said accounts were prima facie joint accounts, available to both or either. To rebut the significance of said joint accounts there devolved upon Mrs. Patti the burden of proving the contrary. Weighing all of the conflicting facts and circumstances we are constrained to conclude that Mrs. Patti has failed to prove that she was the sole depositor and therefore sole owner of said funds. Her uncorroborated testimony that the accounts were opened in the names of herself and her husband in order to facilitate payment of bills by him should she become hospitalized or otherwise incapacitated is without persuasive force.

Under the purely factual situation presented here we feel that a justiciable and equitable conclusion would be to hold that in view of the non-existence of a community between Mrs. Patti and her deceased husband, and in view of her inheritance and rentals forming her separate estate and

monthly income, Mrs. Patti did have a proven source from which to acquire funds to deposit in the said homestead accounts. We find no proof that all of said deposits were made exclusively by her from her own personal funds, but we do find evidence which indicates that said deposits represent in part funds separately owned by her. Consequently, we regard her as a partner in the said joint accounts, entitling her to a one-half of the right, title and interest thereto.

After a thorough study of the record we find no evidence to show that all of the homestead funds herein inventoried belong to the estate of the decedent.

Having concluded that the homestead accounts here in dispute are joint accounts, and that Mrs. Patti is entitled to a one-half right, title and interest thereto, it follows that the inventory should be amended so as to recognize the estate as owner of the other one-half right, title and interest thereto.

Accordingly, for the reasons assigned, the judgment of the district court is reversed, annulled and set aside. It is now ordered, adjudged and decreed that Mrs. Patti be and she is hereby recognized as owner of one-half of the balance on deposit in Account No. 7047 of the Hibernia Homestead Association and one-half of the balance shown on deposit in Account No. 3740 of the Greater New Orleans Homestead Association, both accounts shown to be in

the names of Mr. or Mrs. Vincent Patti, and it is further ordered that the inventory herein be accordingly amended.